# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| CHERYL B. HUNT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 2:16-cv-421-WTL-MJD |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Cheryl B. Hunt requests judicial review of the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Hunt protectively filed her application on December 6, 2012, alleging onset of disability on May 1, 2004.[2] The Social Security Administration ("SSA") initially denied Hunt's application on February 11, 2013. After Hunt timely requested reconsideration, SSA again denied her claim on June 20, 2013. Thereafter, Hunt requested a hearing before an Administrative Law Judge ("ALJ"). An ALJ held a hearing on April 28, 2015, at which Hunt and a vocational expert ("VE") testified. The ALJ issued his decision denying Hunt's

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically became the Defendant in this case when she succeeded Carolyn Colvin as the Acting Commissioner of Social Security on January 23, 2017.

[2] In an SSI claim, the application date is the beginning of the relevant period at issue, as benefits are not retroactive. *See* Social Security Ruling 83-20.

application on May 18, 2015. After the Appeals Council denied Hunt's request for review on August 30, 2016, Hunt filed this action seeking judicial review on October 28, 2016.

## II. EVIDENCE OF RECORD

The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(b).

At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 416.920(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month durational requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(d). At step four, if the claimant is able to perform her past relevant work, she is not

disabled. 20 C.F.R. § 416.920(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony presented," he must "provide an accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## IV. **THE ALJ'S DECISION**

The ALJ found at step one that Hunt had not engaged in substantial gainful activity since the application date. At step two, the ALJ determined that Hunt had the severe impairments of chronic obstructive pulmonary disease ("COPD"), diabetes mellitus, coronary artery disease, left carpal and cubital tunnel syndrome status post surgery, bipolar disorder, generalized anxiety disorder, and a personality disorder. The ALJ determined Hunt had non-severe impairments of deteriorating discs, bursitis in her right hip, carpal tunnel/nerve problems in her right hand, intracranial hypertension, weak bladder/incontinence, obstructive sleep apnea, obesity, and being a slow learner. The ALJ found at step three that these impairments did not, individually or in

combination, meet or equal the severity of one of the listed impairments. The ALJ's residual functional capacity ("RFC") determination was as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: she can only occasionally climb ramps and stairs; the claimant can never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; the claimant can frequently handle and finger with her left upper extremity; she is to avoid concentrated exposure to wetness, dusts, fumes, odors, pulmonary irritants, moving mechanical parts, and unprotected heights; the claimant is limited to simple, routine, repetitive tasks; she is limited to only occasional interaction with the public; the claimant has to be off task five percent of the workday on a routine basis exclusive of breaks; and she needs to have a cane for walking or ambulating.

R. at 24. The ALJ concluded at step four that Hunt could not perform her past relevant work as a gas station clerk. At step five, the ALJ found, based on VE testimony considering Hunt's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that she could perform. Accordingly, the ALJ concluded that Hunt was not disabled.

## V. **DISCUSSION**

Hunt argues that the ALJ erred in three respects, which the Court addresses, in turn, below.

### A. Credibility Determination

Hunt argues generally that the ALJ improperly rejected evidence of record that demonstrates that she requires: 1) the use of oxygen and 2) the ability to elevate her legs during the work day. The VE testified that each of these limitations would preclude all work. R. at 89-90. However, the ALJ did not include either limitation in his RFC finding after determining that Hunt was "not entirely credible." R. at 25. Thus, while Hunt articulates her argument according to Seventh Circuit precedent that holds that an ALJ cannot cherry-pick evidence and must

4

provide a logical bridge between the evidence of record and his conclusions, the Court notes that these arguments actually are an attack on the ALJ's credibility finding.

An ALJ's credibility determination will not be overturned unless "patently wrong."[3] *Herron v. Shalala,* 19 F.3d 329, 335 (7th Cir. 1995); *see also Elder v. Astrue,* 529 F.3d 408, 413–14 (7th Cir. 2008) ("It is only when the ALJ's determination lacks any explanation or support that we will declare it 'patently wrong.'"); *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of facts grounds his credibility finding in an observation or argument that is unreasonable or unsupported can the finding be reversed."). However, when the credibility determination rests on "objective factors or fundamental implausibilities rather than subjective considerations, appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000). Furthermore, an ALJ must provide an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Along with that duty, the ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

**1. Use of Oxygen**

The Court finds the ALJ's explanation for rejecting Hunt's need to use oxygen lacks substantial support in the record. In support of his credibility finding, the ALJ notes in relevant part that:

---

[3] On March 28, 2016, Social Security Ruling 16-3p became effective and issued new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 28, 2016). Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility." *Id.* However, SSR 16-3p is not retroactive; therefore, the "credibility determination" in the ALJ's May 18, 2015 decision is governed by the standard of SSR 96-7p. SSR 16-3p, 2017 WL 5180304 at *1 (Oct. 25, 2017).

> At times, the claimant has been noted to have a portable oxygen tank, although at other times there has been no mention of her oxygen tank (Exhibits 11F; 12F; 14F; 15F; 19F; 20F; 21F; 22F; 24F; 25F). Furthermore, despite her alleged breathing problems, the claimant has continued to smoke up to two packs of cigarettes per day since her application date (Exhibits 10F-12F; 14F; 15F; 20F; 21F; 22F; 25F; and testimony).

R. 26. It is important to point out that the record does not simply note the use of portable oxygen at times; rather, Hunt was *prescribed* supplemental oxygen by a pulmonologist, two liters during the day and four liters at night. R. at 495. The record shows that Hunt had surgery for carpal tunnel syndrome on February 18, 2013. R. at 484. On March 5, 2013, it was noted that her medication included "oxygen 2 liters as directed 24 hours a day." R. at 488. The notes from an examination on March 7, 2013, indicate that Hunt was "adherent with leaving her O2 on," and the provider explained that her pulse oximetry never returned to normal after her surgery, requiring the use of supplemental oxygen. R. at 495.

The ALJ discredits Hunt's need for the prescribed oxygen for two reasons. First, he notes that her oxygen use is not always mentioned in the notes from her medical visits. Second, he notes that Hunt has continued smoking. The intended implications of these two cited reasons are not well developed in the decision. Perhaps the ALJ intended to deny benefits, despite evidence of the requisite severity of Hunt's disabling condition being established, due to noncompliance with prescribed treatment, *see* 20 C.F.R. § 416.930. While the ALJ is required to consider a claimant's need to follow prescribed treatment, the regulations state that in "order to get benefits, you must follow treatment prescribed by your medical source(s) *if this treatment is expected to restore your ability to work."* 20 C.F.R. § 416.930(a) (emphasis added). "Essential to a denial of benefits pursuant to Section 404.1530 is a finding that if the claimant followed her

6

prescribed treatment she could return to work. No such finding was made in this case."[4] *Rousey v. Heckler,* 771 F.2d 1065, 1069 (7th Cir. 1985). As one would expect, Hunt has been advised by her treating providers to stop smoking on numerous occasions. R. at 489 and 1023-24. However, the Court does not see any indication in the record that an acceptable medical source has determined that Hunt's failure either to wear oxygen as prescribed or to stop smoking is the reason she continues to need supplemental oxygen. The ALJ does not cite any evidence supporting either proposition and it is "improper for the ALJ to make his own determination regarding the prognosis of recovery should [Hunt] stop smoking, when the record was devoid of any evidence that she could return to work if she quit smoking."[5] *Rousey,* 771 F.2d at 1069. Absent such evidence, if, in fact, the ALJ intended to use § 416.930(a) as a basis to deny Hunt's claims for benefits, that was error.

It is also possible that the ALJ intended to point to evidence of Hunt's noncompliance with recommended treatment as a reason to discount her credibility regarding the severity of her symptoms. *See* 20 C.F.R. § 416.929(c)(3). If so, the Court finds that the ALJ's conclusion lacks substantial support in the record. In support of his statement that oxygen is not always mentioned in Hunt's medical visit notes, the ALJ cites to entire exhibits without providing pinpoint citations to specific page numbers. R. at 26 (citing Exhibits 11F, 12F, 14F, 15F, 19F, 20F, 21F, 22F, 24F, and 25F). The Court has carefully reviewed the exhibits listed by the ALJ and finds that the vast majority of them do reference the use of prescribed oxygen. Exhibit 11F contains mostly visits prior to Hunt being prescribed oxygen. R. at 463-75. Exhibit 12F mentions the need for oxygen on March 5, 2013, as cited above. R. at 488. Exhibit 14F

---

[4] Section 404.1530 is a parallel section used to evaluate disability insurance benefits claims that is identical to Section 416.930 used to evaluate SSI claims. Case references may involve reference to the parallel section, but the analysis is the same.

[5] The ALJ would similarly not be able to make the determination on his own that Hunt's failure to wear the oxygen as prescribed has contributed to its continuing need.

mentions that she is "still on oxygen" as of April 16, 2013. R. at 499-500. Exhibit 15F notes Hunt to be "on O2" during multiple visits. R. 514 and 518. At the consultative examination at 19F on June 17, 2013, it was noted that Hunt "walked with a portable oxygen device." R. at 572. Exhibit 20F notes that she was wearing "O2 2L" as late as January 6, 2015. R. at 578. Exhibit 21F is predominantly prior to her being prescribed the oxygen, but notes it in multiple visits. R. at 766 and 774. Exhibit 25F notes that on May 27, 2014, her oxygen saturation was measured at ninety three percent on two liters of oxygen at rest. R. at 1023. Some of the exhibits referenced by the ALJ include treatment unrelated to her COPD. Even if there are visits that do not mention the prescribed oxygen, the record contains numerous references over a considerable period of time establishing continued use during the period at issue. There is no evidence supporting that Hunt's condition ever improved to the point she no longer required supplemental oxygen, certainly in the opinion of her treating providers. There is also no disputing that Hunt's medical providers think she requires the use of oxygen *throughout the day*. Even if the Court were to accept the questionable premise that the record supports a finding that Hunt does not always wear the prescribed oxygen to every doctor visit, it would be illogical to conclude from that fact that she would be capable of getting through eight hours at a reduced range of light exertional work without the need for supplemental oxygen.

The ALJ's treatment of Hunt's continued smoking both mischaracterizes the evidence and is undermined by Seventh Circuit precedent. The Seventh Circuit has held on multiple occasions that "the ALJ erred in relying on her failure to quit smoking as evidence of noncompliance and as a basis to find her incredible." *Shramek v. Apfel,* 226 F.3d 809, 813 (7th Cir. 2000); *Rousey,* 771 F.2d at 1069. As to credibility specifically, the Court noted that "it is extremely tenuous to infer from the failure to give up smoking that the claimant is incredible." *Shramek,* 226 F.3d at 813. The Court explained:

> Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health. One does not need to look far to see persons with emphysema or lung cancer—directly caused by smoking—who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the product impacts their ability to stop. This is an unreliable basis on which to rest a credibility determination.

*Id.* Along those lines, the ALJ's decision completely ignores evidence that Hunt had attempted to cut back from two packs per day, testifying at the hearing she was only smoking four cigarettes a day. R. at 67. Many of the exhibits cited generally by the ALJ and referenced by page number by the Commissioner only reflect that she was currently smoking, without reference to how much, R. at 464-65, 477, 489, 499, 509, 514, and 518, or indicate she was smoking significantly less than two packs per day, R. at 457, 835, and 1023-24. Given the evidence supporting Hunt's willingness to quit, but inability to do so, the ALJ's use of her smoking was improper.

**2. Need to Elevate Legs**

The ALJ's dismissal of Hunt's need to elevate her legs at times while sitting also lacks substantial support in the record. The VE testified that any need to elevate her legs at her workstation would not be permitted in the competitive workforce absent an accommodation. R. at 90. The ALJ did not include this restriction in his RFC, however, noting, in relevant part:

> In June of 2013, the claimant was advised to keep her extremities elevated (Exhibit 20F/24). However, there was no indication how long she should be elevating her legs. In addition, as discussed previously, the claimant has frequently been noted to have no edema in her extremities (Exhibits 11F-13F; 24F; 25F).

R. at 26. The Commissioner correctly notes that Hunt was advised by a nurse, not an acceptable medical source, to elevate her legs. However, the ALJ did not take issue with the source, but rather the lack of sufficient detail as to how often Hunt would need to elevate her legs. Hunt testified that she needed to elevate her legs for an hour after being up for two to three hours, R. at

9

56, and described her daily schedule as including the need to sit or lie down to elevate her legs multiple times throughout the day in between her modest daily tasks, R. at 75-76. Hunt's testimony on the point does not appear to be directly contradicted by the record. The ALJ had multiple options, including contacting the treating source for clarity on the issue or asking a medical expert for assistance as to a reasonable limitation, but instead decided to simply reject the need for Hunt to elevate her legs entirely.

The ALJ does note that Hunt's medical records "occasionally" show edema (the basis for Hunt's need to elevate her legs), but "frequently" do not. R. at 25. Again, the ALJ only cites to entire exhibits. While the Commissioner has provided specific page number references for instances where edema was not noted, the Court notes that even some of those pages actually do show continued edema after Hunt was advised to elevate her legs. *See* R. at 943-44 ("Edema +2 B/L in lower extremities and feet" on July 23, 2013); R. at 597 ("There is 3+ pitting edema noted in the lower extremities and ankles bilateral" on September 9, 2013). The Court is not persuaded that the ALJ's characterization of the record as "occasionally" showing edema and "frequently" not showing edema is accurate as those terms are normally defined in disability adjudication. POMS § DI 25001.001, Medical and Vocational Quick Reference Guide (citing Selected Characteristics of Occupations ("Occasionally" defined as "Activity or condition exists up to one-third of the time"; "Frequently" defined as "Activity or condition exists from one-third to two-thirds of the time")). However, there is at least support for the idea that edema has not always been present on exam. The problem is that Hunt testified to limiting her daily activities to avoid being on her feet and taking active measures, specifically elevating her feet, to avoid exacerbating her edema. The Court is not persuaded that instances where edema was not noted on exam are a reflection that these measures are no longer needed, rather than simply a reflection that they have at times been effective. Therefore, it was not reasonable for the ALJ to find that

Hunt does not need to elevate her legs at all based on the fact that edema was not noted at all of her medical examinations.

### B. Hunt's Additional Arguments

Hunt makes two additional arguments. First, Hunt argues that the ALJ did not provide an adequate explanation for concluding that listing 3.02(A) was not met or equaled based on the evidence of record. On remand, the ALJ should specifically address Exhibit 25F, which was submitted after the hearing and which contains a pulmonary function study that is relevant to the listing analysis. The Court also notes that the reviewing sources that opined that no listing was *equaled* reviewed the record prior to the submission of the study, so their opinions are not evidence regarding the significance of the study in question.

Hunt further argues that the ALJ's RFC determination and resulting hypotheticals to the VE did not adequately account for the moderate limitations of concentration, persistence and pace found by the ALJ in evaluation of the "B" criteria. On remand, the ALJ should articulate what evidence of record supports his finding that Hunt would be off-task for five percent of the day in addition to regular breaks and ensure that the RFC accounts for all of the limitations supported by the record.

### VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with the Court's Entry.

SO ORDERED: 2/23/18

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification